**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

LANDRON & VERA, LLP, ET AL.,

    Plaintiffs,

    v.

GUILLERMO SOMOZA-COLOMBANI, ET AL.,

    Defendants.

**Civil No. 12-1858 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendants' motions to dismiss (Docket # 12 & 18), the plaintiffs' opposition thereto (Docket # 14), and the defendants' reply (Dockets # 48).[1] After reviewing the filings and the applicable law, the defendants' motion are **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

This is a case involving political discrimination claims stemming from the 2008 election in Puerto Rico. Landrón & Vera, LLP (L&V), a Puerto Rico law firm, and two of its partners, Eileen Landrón-Guardiola, and Eduardo Vera-Ramírez (collectively, Plaintiffs), bring this civil rights action under 42 U.S.C. § 1983, alleging that, because of their political affiliation, the defendants refused to honor L&V's contracts with the Puerto Rico Department of Justice (DOJ). The defendants, who are being sued only in their personal capacities, are Guillermo Somoza-Colombani (Somoza), the former Secretary of Justice, Grisel Santiago-Calderón (Santiago), "the former Acting Deputy Secretary in Charge of Litigation," and Antonio Sagardía-De Jesús (Sagardía), who was the Secretary of Justice from January to December 2009 (collectively, Defendants).

---

[1]Defendant Sagardía-De Jesús' motion for joinder (Docket # 18) is granted.

**CIVIL NO. 12-1858 (SEC)** **Page 2**

Because the Court is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will draw Plaintiffs' well-pleaded facts from their complaint, supplementing them with references to documents annexed to or fairly incorporated into it. Katz v. Pershing, LLC, 672 F.3d 64, 69 (1st Cir. 2012).

L&V was founded in 2001 by Landrón-Guardiola and Vera-Ramírez. According to the complaint, Plaintiffs' affiliation to the Popular Democratic Party (PDP) is no mystery: L&V has "participated in hundreds of cases representing the PDP, its officers and its constituents against NPP officers and constituents." In 2001, L&V and the DOJ, whose Secretary at that time was appointed by the PDP, subscribed several contracts for legal services. From 2001 to 2009, L&V allegedly handled "more than three hundred [legal] matters" for the PDP-controlled DOJ.

Starting in late 2006, the DOJ allegedly commenced making "partial and belated payments." Different excuses were given by the DOJ, the complaint avers, and L&V had to "wait under the expectation that full payment would be forthcoming." Because of "bureaucratic and administrative incompetence," Plaintiffs allege that the payments "were delayed or partially paid although the monies for the relevant legal services' contracts were properly earmarked as required under the applicable laws and regulations." From July to September 2006, however, L&V "kept receiving referrals of cases to assume by the DOJ but the services' contract, signed by L&V, had not been signed by [the Secretary of Justice at that time]." According to the complaint, the contract in question was signed in September 2006, although "[the Secretary] should have done so" on June 20, 2006. In order to cure this deficiency, the DOJ "signed a retroactive contract that enabled the payment to L&V" for the services rendered during the July-September 2006 time frame.

At any rate, the DOJ's failure to make payments, Plaintiffs allege, simply continued. Things changed in late 2008, when the Department allegedly "admitted that it owed all amounts

**CIVIL NO. 12-1858 (SEC)**                                                                                    **Page 3**

that had been billed by L&V." According to the complaint, the amounts owed were "earmarked at the relevant time." A regime change was produced in the wake of the 2008 general elections, and, in January 2009, the NPP-controlled administration took over the DOJ. Because of this "timing," Plaintiffs allege that "no payment was made on the past due amount which at the time exceeded $1,000,000." Politics as usual, the heretofore interrupted contractual relationship between the DOJ and L&V ended shortly thereafter in February 2009.

During 2009, Plaintiffs say they continued requesting from Defendants "full payment of the monies owed to L&V" to no avail. Then, on March 20, 2009, the DOJ's "former Director of the Finance Department . . . certified in writing . . . that the monies owed to L&V as of December 31, 2008 amounted to $708,897.63." The parties met repeatedly to discuss the issue. For instance, defendant Santiago presided over a meeting held on August 26, 2009. Another meeting, which was also presided by Santiago, was held on September 10, 2009. According to the complaint, in that meeting Defendants stated "for the first time that payment could not be effectuated due to a circular letter issued by the then Comptroller which according to Santiago prevented the DOJ from lawfully paying L&V by the mechanism of Resolution." During the meeting, Plaintiffs informed Santiago that a law firm closely tied to the NPP, Aldarondo, López, Bras, PSC (ALB), "had been paid that same year (around $90,000)" via the so-called "Resolution mechanism." Plaintiffs also conveyed to Santiago that paying ALB "as opposed to L&V, was politically motivated discrimination." Plaintiffs also allegedly told Santiago that this "evidenced the different and politically motivated discriminatory treatment towards L&V."

In order "to cover up the political discrimination against L&V," the complaint avers, the DOJ "instructed [ALB] to reimburse the monies paid by Resolution which of course he did." Plaintiffs argue that this is "clear proof that [ALB] is being granted a different and preferential treatment because they are linked to the NPP." This "unequal treatment," the complaint further

**CIVIL NO. 12-1858 (SEC)**                                                                 **Page 4**

alleges, is evinced "by the fact that a resolution was made specifically to make a payment to [ALB] in circumstances where it had no formal written contract, during the period in which defendants were adamant in negating such possibility to the plaintiffs."

Things unraveled in late 2009. "After many communications requesting the decision in writing," through a letter (signed by Santiago) dated October 13, 2009, Plaintiffs were "informed . . . [that] the DOJ would not pay." According to the complaint, "no explanation was given." In fact, the letter "apparently was not notified" to then-Secretary Sagardía. After Sagardía left the DOJ in late 2009, Somoza succeeded him as Secretary. "In order to pursue a solution," Plaintiffs allege that "they personally and in writing . . . sought the assistance of defendant Secretary Somoza." With their patience running low, "Plaintiffs at this point accused Somoza . . . of the politically discriminatory nature of the decision not to pay L&V." According to the complaint, however, Somoza "knowingly and willfully sanctioned time and again the discriminatory action of not paying L&V."

On February 8, 2010, the DOJ reiterated its "'position' not to pay," as per the October 13, 2009 letter. "Again," Plaintiffs say, "this letter lacked any justification for this decision." "As they had no other alternative," Plaintiffs "filed for bankruptcy" shortly thereafter. Then, on October 13, 2010, Plaintiffs sent a written communication to Defendants, advising "them of the intent to claim damages for the violation of civil rights and for damages inflicted by them upon the plaintiffs." An identical letter ensued on October 12, 2011.

This suit followed on October 10, 2012. Docket # 1. In it, Plaintiffs sue Defendants in their personal capacities, alleging that they refused to honor the contracts with the DOJ because of Plaintiffs' political affiliation to the PDP, in violation of their rights under the First Amendment and the Equal Protection Clause. The complaint also asserts a cause of action "under the Constitution and laws of the Commonwealth of Puerto Rico, including, but not

**CIVIL NO. 12-1858 (SEC)**                                                                                                **Page 5**

limited to, Article 1802 of the Puerto Rico Civil Code." Id., p. 20.[2] Alleging garden-variety damages, Plaintiffs request a compensation in excess of $10 million. Id.[3]

Defendants Somoza and Santiago then moved to dismiss for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), arguing that (1) the complaint fails to articulate a plausible § 1983 claim for any of the alleged constitutional violations; (2) the complaint is time-barred; (3) Defendants are entitled to the Mt. Healthy defense; and (4) they are entitled to qualified immunity on all claims. Docket # 12. Sagardía, for his part, joined the motion to dismiss (see note 1 above) and additionally assails the sufficiency of the allegations directed at him. Docket # 18, p. 2. Plaintiffs timely opposed. Docket # 32.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating whether the plaintiffs are entitled to relief, the court must accept as true all "well pleaded facts [and indulge] all reasonable inferences" in their favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "Dismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández v.

---

[2] While Plaintiffs also advanced two causes of action under the Contracts and Takings Clauses, they have since "abandon[ed] their contracts and taking clause arguments, upon a good faith belief that they are not properly directed to personal capacity defendants." Docket # 32, p. 5 n. 2. This concession is well taken, see Fed. R. Civ. P. 11(b)(2) (counsel must ensure that their "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . ."). Consequently, these claims are **DISMISSED with prejudice**.

[3] Although they requested injunctive relief, Plaintiffs have since abandoned such a relief: "This is but a clerical mistake, as the complaint is clearly directed solely against the personal capacity defendants . . . ." Docket # 32, p. 15 n. 7. Thus, any claims for injunctive relief are **DISMISSED with prejudice**.

Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). But even under the liberal pleading standards of Federal Rule of Civil Procedure 8, Twombly teaches that to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court clarified that two underlying principles must guide a court's assessment of a complaint's adequacy. First, a court must discard any conclusory allegations in the complaint, as these are not entitled to an assumption of truth. Id. at 677. That is to say, courts must disregard "rote repetition of statutory language," McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217 (1st Cir. 2012), as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 555). Some averments, moreover, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556 U.S. at 670. A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" Gianfrancesco v. Town of Wrentham, 712 F.3d 634 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 663). Plausibility, the Court has instructed, is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 678. In doing so, courts must keep a bedrock principle in mind: A complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernández, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). So, while a complaint must be supported by facts and not mere generalities, "only enough facts to make the claim plausible" are required. Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012). "The place to test factual

assertions for deficiencies and against conflicting evidence is at summary judgment or trial." Id. Finally, because "the response to Twombly and Iqbal is still a work in progress," Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012), the First Circuit has cautioned that "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where . . . . 'some of the information needed may be in the control of [the] defendants.'" Id. (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)).

**Applicable Law and Analysis**

*I. Claims under the U.S. Constitution*

The Court's analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for the vindication of federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). To prove liability under § 1983, a "plaintiff[ ] must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). Moreover, under § 1983, government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff must therefore link each individual defendant to the alleged violation of federal rights. González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). In other words, each defendant responds for his own acts or omissions in light of his duties; there is no liability on the basis of respondeat superior. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir.1994); Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the actionable conduct must be intentional, grossly negligent, or with reckless or callous indifference to established

**CIVIL NO. 12-1858 (SEC)** **Page 8**

constitutional rights. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir.1986).

Here, Plaintiffs' complaint satisfies the first prong of the § 1983 analysis, as all the decisions at issue in this case were taken under color of state law. Defendants do not dispute this point. They contend instead that Plaintiffs' complaint fails to state a violation of a constitutional right. The Court addresses Defendants' contentions in turn.

*A. First Amendment Political Discrimination Claims*

It should go without saying that political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has remarked: "The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico ex rel. Justice Dep't., 494 F.3d 1, 4 (1st Cir. 2007). "[T]he First Amendment protects associational rights ... [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004). As relevant here, independent contractors are protected from political discrimination. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 714-15 (1996); Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005).

Generally, to state an actionable claim of political discrimination, the plaintiff's complaint should "plausibly allege that he is not of the defendants' political affiliation and that the defendants were aware of his affiliation. The complaint must also allege an adverse employment action and that political affiliation was a substantial or motivating factor for the adverse action." Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 40-41 (1st Cir. 2012) (citing Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)). Earlier this year, however, the First Circuit joined its sister courts in holding that, in a discrimination case, "a prima facie case is not

**CIVIL NO. 12-1858 (SEC)**                                                                                                                                      **Page 9**

the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 51 (1st Cir. 2013); accord, e.g., Ramírez-Vega v. Wal-Mart Puerto Rico, Inc., No. 12-1361, 2012 WL 6597894, at * 3 (D.P.R. Dec. 18, 2012). Still, "[t]hose elements are part of the background against which a plausibility determination should be made." Rodríguez-Reyes, 711 F.3d at 55; see also id. ("Athough a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial — in a discrimination case, the prima facie standard — she need not plead facts sufficient to establish a prima facie case."). It is common ground, moreover, that "each defendant's role in the [discriminatory action] must be sufficiently alleged to make him or her a plausible defendant. After all, [courts] must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Rodríguez-Ramos, 685 F.3d at 40-41 (citations and alterations omitted; emphasis added); see also, e.g., Ocasio-Hernández, 640 F.3d at 16 ("[E]ach defendant's role in the termination decision must be sufficiently alleged to make him or her a plausible defendant." (emphasis omitted)).

As noted above, defendant Sagardía contends that the complaint is devoid of the factual allegations necessary to properly plead a political discrimination claim against him. Docket # 18, p. 2. Specifically, he argues that the complaint "does not contain any factual information that specifically points to any unconstitutional act or omission [involving him]." Id. He is correct. Plaintiffs' allegations regarding Sagardía's participation in the alleged discriminatory acts are plainly inadequate. The only two, meager allegations that mention Sagardía are that (1) Sagardía was "apparently . . not notified" of the October 13, 2009 letter (signed by Santiago) informing Plaintiffs "that the DOJ would not pay"; and (2) "after Sagardía left in late 2009, defendant Somoza became Secretary of Justice." Docket # 1, ¶¶ 47-48.  These allegations fall way short of pleading plausible causality. "Liability under Section 1983 ," the First Circuit has made clear,

"'cannot rest solely on a defendant's position of authority . . . .'" Rodríguez-Ramos, 685 F.3d at 41 (quoting Ocasio-Hernández, 640 F.3d at 16). But that is the most that Plaintiffs appear to offer as to the role of defendant Sagardía in the DOJ's refusal to honor the contracts in question. Because the complaint contains no allegations that Sagardía "actually participated in or condoned the . . . decision at issue here, it fails to render [him] [a] plausible defendant[ ]." Id. In fact, the complaint avers just the opposite: That Sagardía was "apparently . . not notified" of the DOJ's decision to not pay Plaintiffs, and that he resigned shortly thereafter. Docket # 1 ¶¶ 47-48.

In short, no basis exists from which to infer that Sagardía engaged in or "set[ ] in motion a series of acts" that led to the alleged adverse employment action. Gutierrez–Rodríguez v. Cartagena, 882 F.2d 553, 561 (1st Cir.1989) (internal quotation marks omitted)). This infirmity is compounded by Plaintiffs' failure to oppose Sagardía's contentions; that omission "authorizes the presiding district judge to summarily grant the unopposed motion, 'at least when [, as here,] the result does not clearly offend equity.'" Rodríguez-Salgado v. Somoza-Colombani, No. 11-2159, 2013 WL 1403263, at *3 (D.P.R. Mar. 1, 2013) (quoting NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (to be published in F.Supp.2d)). Sagardía's motion is therefore **GRANTED**, and all of Plaintiffs' claims against him are **DISMISSED with prejudice**.

The same cannot be said about the allegations against Santiago and Somoza. As to them, the complaint properly alleges their direct involvement in the decision to deny payment to Plaintiffs. The complaint paints a detailed factual scenario in which Defendants engaged in a pattern of actions and omissions directed to avoid payment for services rendered by Plaintiffs under the PDP administration. See Docket # 1, ¶¶ 2-3 & 32-46. And the collective weight of the complaint supports the reasonable inference that, in denying payment (or at the very least, part of it), Somoza and Santiago, who are associated with the NPP, politically discriminated against

L&V because of the latter's political affiliation to the PDP.[4] Somoza and Santiago's undeveloped arguments that "Plaintiffs have failed to establish a prima facie case of political discrimination," fail to persuade. Docket # 12, p. 12. That is so because their contentions run afoul of the First Circuit's recent holding that "a prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold." Rodríguez-Reyes, 711 F.3d at 51.

At this stage of the proceedings, where the Court must credit all proper factual allegations, Plaintiffs' allegations against Santiago and Somoza nudge their claims "across the line from conceivable to plausible," Twombly, 550 U.S. at 570; see also Liu, 677 F.3d at 497 (noting that Twombly and Iqbal "require that facts and not mere generalities be set forth in a complaint, but only enough facts to make the claim plausible, and at this stage reasonable inferences are taken in favor of the pleader" (citation omitted and emphasis added)).[5] Of course, with the necessary evidentiary support, they may still successfully challenge Plaintiffs' factual allegations at the summary judgment stage. For now, however, Santiago and Somoza's request is **DENIED**.

---

[4] To the extent that Somoza and Santiago — for the fist time in their reply — argue that "plaintiffs have failed to demonstrate that defendants knew about their political affiliation or that this was a reason for non-payment," Docket # 48, p. 5, the Court declines to address their argument. It is beyond dispute that a party cannot raise new issues in a reply brief. E.g., Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983) (Breyer, J.); see D.P.R. Civ. R. (7)(c) ("[M]oving party my file a reply memorandum . . . [,]which shall be strictly confined to replying to new matters raised in the objection or opposing memorandum."). The same is true regarding Somoza's argument that Plaintiffs make no "specific animus allegations" against him. Docket # 48, p. 6.

[5] The Court, alas, can take judicial knowledge under Fed. R. Ev. 201(b)(1) of this type of "discriminatory sequence that is all too familiar in this circuit." Ocasio-Hernández, 640 F.3d at 19. "With each change in administration . . . the federal district courts in Puerto Rico are flooded with hundreds of political discrimination cases . . . ." Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004).

**CIVIL NO. 12-1858 (SEC)**                                                                                        **Page 12**

*B. Fourteenth Amendment Equal Protection Claims*

The Equal Protection Clause establishes that "persons similarly situated must be accorded similar governmental treatment." Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). The First Circuit, however, has mandated district courts to disregard equal protection claims that overlap with an asserted First Amendment political discrimination claim. See, e.g., Nestor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir.1992) (finding "little basis or justification for applying equal protection analysis" in such a situation, as the First Amendment already protects individuals against political discrimination). "[T]his rule does not depend on the likely success of the plaintiff's First Amendment claim; so long as his allegations of political discrimination fit within the contours of the First Amendment, they are, a fortiori, insufficient to ground a claim that the politically-inspired misconduct violated equal protection guarantees." Pagán v. Calderón, 448 F.3d 16, 37 (1st Cir. 2006); Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (finding that plaintiff's equal protection claim, premised on allegations of political discrimination, "flounders"). This principle is dispositive here.

According to the complaint, Defendants contravened the Equal Protection Clause when they created

> an illicit classification and distinction between contractors that rendered services for a given period without a formal written contract to the government period to the 2009 change in government administration, and those who did so after 2009, to justify payment to one classification while excuses and pretexts are tailored and brandished to chastise[] the other. Docket # 1, ¶ 58.

But this is just another creative way of alleging political discrimination. Indeed, by Plaintiffs' own admission, the purported "classification" is "illicit" precisely because it is allegedly grounded on a political animus. See id. ¶ 4 (alleging that Defendants' "deliberate discriminatory actions to negate a payment that is obviously due for legal services rendered under the past governmental administrator is a violation of the . . . Equal Protection Clause[ ] . . ."). So, insofar as Plaintiffs challenge the DOJ's decision to create a class of independent contractors based on

their political affiliation or association (the year 2009 being merely coincidental), they "cannot rely on the Equal Protection Clause but, rather, must bring [their] claim under the specific provisions of the First Amendment." Pagán, 448 F.3d 16 at 36; Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 8 (1st Cir. 2010) ("An equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim and . . . should have been considered under the First Amendment." (citations omitted)). Plaintiffs' claims under the Equal Protection Clause are therefore **DISMISSED with prejudice**.

*II. The Statute of Limitations Challenge*

Next, Defendants challenge Plaintiffs' constitutional claims with a statute of limitations argument. They argue, without much in the way of an argument, that Plaintiffs' allegations regarding the extrajudicial tolling letters sent to Defendants, "without more do[ ] not contain the specificity necessary to adequately toll the statute of limitations." Docket # 12, p. 12. This argument is well off the mark. The short of it is that Defendants contention fails to abide by the First Circuit's "oft-quoted maxim that litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir.2013) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)). Defendants do not even discuss the Puerto Rico cases that discuss "the tolling effect of an extrajudicial letter." Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 114 (1st Cir. 2009); see Cintrón v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582 (1990). Such a lackluster effort suffices to summarily reject the perfunctory argument. See, e.g., Rodríguez-Machado v. Shinseki, 700 F.3d 48, 49 (1st Cir. 2012) (per curiam). Above all, the facts establishing Defendants' statute-of-limitations defense are not "clear on the face of the plaintiff's pleadings," Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citation and internal quotation marks omitted). Defendants' motion on this score is **DENIED**.

**CIVIL NO. 12-1858 (SEC)**                                                                 **Page 14**

*III. The Mt. Healthy Defense*

"In Mt. Healthy City School District Board of Education v. Doyle, the Court established a two-part burden-shifting analysis for evaluating free speech claims, which has also been applied in the political discrimination context." Padilla-García v. Rodríguez, 212 F .3d 69, 74 (1st Cir. 2000). Under this analysis, the plaintiffs must first show that they engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision. Id. If the plaintiff does so, then the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs — commonly referred to as the Mt. Healthy defense. Id. The Mt. Healthy defense has been described by the Supreme Court in the following way: "it deals with employment actions driven by 'mixed motives,' and provides that where there are both 'lawful' and 'unlawful' reasons for the adverse employment action, 'if the lawful reason alone would have sufficed to justify the [action], 'then the employee cannot prevail." Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 6 (1st Cir. 2012) (citing McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)).

Here, Defendants also move the Court to dismiss the complaint, asserting that the Mt. Healthy defense precludes any liability against them. Because there was an independent non-discriminatory reason (viz. the lack of a written formal prospective contract) for denying payment to Plaintiffs, the argument goes, they should be allowed to avail themselves of this defense at the pleadings stage. This invitation is premature, however.[6] Indeed, Defendants have

---

[6]In support of this contention, Defendants attach, but do not discuss, a certified English translation of Jaap Corp. v. Departamento de Estado, where the Puerto Rico Supreme Court recently resolved that "retroactive government contracts are contrary to our government contracts precepts that foster sound public administration." 2013 TSPR 11, 2013 WL 613670, at * 1 (D.P.R. Feb. 1, 2013) (Docket # 49-1, p. 2). The time will come to discuss Jaap Corp's potentially important implications on this case, but that time is not now.

Moreover, for the first time in their reply, Defendants invoke Ramírez v. Arlequin, for the purportedly controlling proposition that Plaintiffs First Amendment claims are conditioned on the

**CIVIL NO. 12-1858 (SEC)** **Page 15**

provided no reason for the Court to deviate from the general rule that the Mt. Healthy defense "is inappropriate at the motion to dismiss stage because the parties have not yet engaged in any significant discovery." Artache-Pagán v. Municipality of Gurabo, No. 12-1842, 2013 WL 1973832, at * 4 (D.P.R. May 13, 2013) (citations and internal quotation marks omitted); see Thomas v. Eby, 481 F.3d 434, 442 (6th Cir. 2007) (arguing that "it makes little sense to apply . . . [the Mt. Healthy defense] at the pleading stage"); Johnson v. Eggersdorf, 8 F. App'x 140, 144 n. 1(2d Cir. 2001) ("Mt. Healthy sets forth the appropriate standard for a § 1983 claim at trial, not for a motion to dismiss based on the pleadings."); Reyes-Orta v. Highway & Transp. Auth., 843 F. Supp. 2d 216, 224 (D.P.R. 2012); Velázquez v. Dávila, No. 08-113, 2009 WL 453461, at *3 (D.P.R. Feb. 20, 2009). Moreover, Defendants nowhere address Plaintiffs' detailed allegations, whose truth must be presumed at this plaintiff-friendly stage, that they were singled out for nonpayment because of their known political adherence to the PDP, while others similarly situated and NPP-friendly independent contractors (e.g., ALB), were duly paid by Defendants. At the pleadings stage, unsurprisingly, Defendants fall way short of showing that Plaintiffs' "protected conduct was not the 'but-for' cause of the adverse action." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 767 (1st Cir. 2010) (quoting Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 81 (1st Cir. 2006)). This suffices to discard Defendants' Mt. Healthy defense at this stage of the proceedings. Accordingly, Defendants' request is **DENIED**. If appropriate, they may restate this defense at a later stage.

---

existence of a valid contractual agreement between L&V and the DOJ — put another way, a legal entitlement to payment. Docket # 48, p. 3 (citing 447 F.3d 19, 22 (1st Cir. 2006)). Maybe so. But, as correctly noted by Plaintiffs (and apparently conceded by Defendants), this determination would not dispose of the entire matter in any event, as "the retroactive contract/payment resolution issues do not add up to the totality of the amount requested, but roughly half . . . ." Docket # 32, p. 20. At any rate, Defendants' fact-based defense cannot be considered at the pleadings stage, not least because it is unclear what contracts were actually reduced to writing. See, e.g., Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012) ("The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial.").

**CIVIL NO. 12-1858 (SEC)** **Page 16**

*IV. The Qualified Immunity Defense*

Finally, Defendants contend that the qualified immunity doctrine bars Plaintiffs' claims. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez–Rivera, 431 F.3d 1, 6 (1st Cir.2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test. Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir.2009). That is, a "court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. The second step of the qualified immunity analysis, in turn, has two aspects. One aspect focuses on the clarity of the law at the time of the alleged civil rights violation, and the other focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Id. at 269.

Here, the Court already established that Plaintiffs' complaint ably pleas claims under the First Amendment. The case law highlighted above, furthermore, shows that (at least some of) Plaintiffs' First Amendment rights were clearly established at the time of the events underlying the complaint. On the pleadings alone, however, the Court is unable to determine whether an objective official in Defendants' position would have reasonably concluded that their actions ran afoul of the First Amendment. That is to say, there are issues of fact as to the existence *vel non* of a discriminatory motivation in connection with Defendants' acts and omissions in refusing to pay Plaintiffs.

Because the facts here are not sufficiently determinable on a motion to dismiss, the Court is "unable to make the factual determinations that must underpin any ruling on qualified

**CIVIL NO. 12-1858 (SEC)**                                                                                                          **Page 17**

immunity." Peña-Peña v. Figueroa-Sancha, 866 F. Supp. 2d 81, 94 (D.P.R. 2012). "The role of each defendant will be made clearer in discovery, and, after further factual development, defendants are free to renew their claim of entitlement to qualified immunity in a motion for summary judgment if they think it appropriate." Peña-Peña v. Figueroa-Sancha, No. 12-1939, slip. mem. at 1-2 (1st Cir. Dec. 10, 2012) (denying qualified immunity-based interlocutory appeal); accord Ortiz v. Jordan, 131 S.Ct. 884, 891 (2011). By like token, Defendants' qualified immunity defense under Puerto Rico law is deferred for a later stage of the proceedings.

**Conclusion**

For the reasons stated, Defendants' motions to dismiss are **GRANTED in part and DENIED in part**. All of Plaintiffs' claims against Sagardía are **DISMISSED with prejudice**. Their Equal Protection Clause claims, as well as their claims under the Takings and Contracts Clauses, are also **DISMISSED with prejudice**. The only surviving claims, therefore, are Plaintiff's First Amendment personal-capacity claims against Somoza and Santiago, as well as the state-law claims against them.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of June, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge